**DUNCAN FIRM, P.A.**
James H. Bartolomei III (CA Bar 301678)
Email: james@duncanfirm.com
809 W. 3rd Street
Little Rock, Arkansas 72201
Telephone: (501) 228-7600
Fax: (501) 228-0415

*Attorneys for Plaintiff Todd Bigelow*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| TODD BIGELOW,<br><br>     *Plaintiff*,<br><br>  v.<br><br>IMPREMEDIA OPERATING COMPANY, LLC, and DOES 1 through 10, inclusive, and each of them,<br><br>     *Defendants*. | **COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Todd Bigelow, for his complaint against Defendant Impremedia Operating Company, LLC, alleges upon personal knowledge as to his own conduct, and on information and belief based on the investigation of Plaintiff's counsel, as to all other conducted alleged herein, as follows.

### I. INTRODUCTION

1. This is a case about willful copyright infringement under 17 U.S.C. §§ 101 *et seq*. and 505 *et seq*. by La Opinión, the most widely read Spanish-language newspaper in the United States, and second largest newspaper in Los Angeles, which wrongfully copied, distributed, and displayed Plaintiff's copyrighted Photo (the "Photo") without a license or authorization from Plaintiff.

2.     Plaintiff also makes claims for copyright management information ("CMI") violations pursuant to 17 U.S.C. §§ 1202 and 1203 et. seq., for each instance the Photo was copied and displayed and the CMI information was deleted, altered, removed and/or false CMI was added by Defendant to the Photo.

## II.    PARTIES

3.     Plaintiff Todd Bigelow ("Plaintiff" or "Bigelow") is a resident of California and this District.  He is the owner of a copyrighted Photo that was copied, distributed, and displayed by Defendant Impremedia Operating Company, LLC in violation of Bigelow's exclusive bundle of rights pursuant to the Copyright Act.  The copyrighted Photo at issue shown below.  The Copyright Registration for Plaintiff's photo is attached as Exhibit A.

4.     Defendant Impremedia Operating Company LLC ("Defendant"), d/b/a La Opinión, owns and operates, La Opinión, the largest Spanish-speaking newspaper in the United States with a website found at https://laopinion.com/. Defendant is a Delaware company with its principal place of business and headquarters at 445 S. Figueroa Street, Suite 3100, Los Angeles, California 90071. Defendant can be served at CT Corporation, 330 N. Brand Blvd, Glendale, California, 91203.

5.     Plaintiff does not yet know the identity of all Defendants that displayed, distributed, and/or altered CMI of Plaintiff's Photos or otherwise had direct, non-tangential participation in the conduct found to have violated the Copyright Act and CMI statutes, including authorizing such conduct.  Upon learning of the identities of said individuals or entities, Plaintiff may move to amend to name the individuals as defendants.

6.     Whenever in this complaint it is alleged that Defendant(s) committed any act or omission, it is meant that the Defendants' officers, directors, vice-principals, agents, vendors, contractors, directors, executives, management, employees, subsidiaries, or affiliates committed such act or omission and that at the

1    time such act or omission was committed, it was done with the full authorization,

2    ratification or approval of Defendant or was done in the routine normal course and

3    scope of employment of the Defendant's officers, directors, vice-principals,

4    executives, management, agents, servants, or employees.

5                          **III.   JURISDICTION AND VENUE**

6         7.      This is a civil action seeking damages and injunctive relief for

7    copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq*. and 505

8    *et seq*.

9         8.      This Court has original subject matter jurisdiction over all claims

10    pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338 (copyrights).

11        9.      Venue is proper in this District because Defendant (1) committed

12    intentional acts (copyright infringement), (2) expressly aimed at the forum state of

13    California, (3) and caused harm that Defendant knew would likely be suffered in

14    the forum state.

15        10.      The claims alleged also arise out of or relate to Defendant's regular

16    and systematic activities in this District, and the fact that Plaintiff would not have

17    been injured but for Defendant's conduct that violated his rights from California.

18        11.      Venue is proper in this District pursuant to 28 U.S.C. § 1400(a) (venue

19    for copyright cases) because Defendant may be found in this District.

20        12.      This Court has *in personam* jurisdiction over Defendant because

21    Defendant availed itself of the privileges of conducting business in this District and

22    the State of California and incurred a benefit from such infringements, thus it is

23    reasonable for Defendant to submit to the jurisdiction of this California federal

24    district court.

25        13.      Based on the public court dockets, Defendant has been sued at least six

26    (6) times since 2017 for copyright infringement and on information and belief,

27    settled numerous copyright infringement claims, and it is alleged to be a serial

28    infringer with a knowledge of its obligations under the Copyright Act, but fails to

1 | implement any safeguards against pirating copyright holder's works or having a
2 | rights-clearance policy to prevent infringement.

3 |      14.    Defendant has regularly and systematically transacted business within
4 | California and contracted for services in California in connection with the matters
5 | giving rise to this suit.

6 | **IV.   FACTUAL ALLEGATIONS**

7 | **A. The Importance of Copyright and Bundle of Rights**

8 |      15.    Copyrights are the legal title to intellectual property by which creators
9 | of original content such as photos protect their moral and economic rights in that
10 | content.

11 |      16.    Respecting and defending the financial value of creator's copyrighted
12 | work is a bedrock of our democracy, so important that the Founding Fathers
13 | enshrined the Constitution with specific references to copyrights, and which
14 | expressly gave Congress the power to "promote the Progress of Science and useful
15 | Arts, by securing for limited Times to Authors and Inventors the exclusive Right to
16 | their respective Writings and Discoveries."  U.S. Const. Article I, Section 8.
17 | "Copyright law encourages people to create original works and thereby 'ultimately
18 | serves the purpose of enriching the general public through access to creative
19 | works.'"  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994).

20 |      17.    The Supreme Court of the United States found that by "establishing a
21 | marketable right to the use of one's expression, copyright supplies the economic
22 | incentive to create and disseminate ideas."  *Harper & Row Publishers, Inc. v.*
23 | *Nation Enters.,* 471 U.S. 539, 558 (1985).

24 |      18.    Section 106 of the Copyright Act (the "Act") grants copyright owners
25 | the exclusive public display right and control of the economic value of their work.
26 | The Act makes it illegal to publicly perform, publicly display, distribute, or
27 | reproduce a copyrighted work except in limited instances, and provides for actual or
28 | statutory damages.

19.    In 1976, the Act was amended to give content creators such as Plaintiff an automatic copyright in his Photo.

20.    To file suit based on an alleged infringement, that automatic copyright interest must be registered with the U.S. Copyright Office, which Plaintiff completed prior to filing suit.

**B. Background on Plaintiff & His Copyrighted Photo**

21.    Plaintiff Todd Bigelow is a renowned American photographer and industry leader on the business of photography.

22.    Plaintiff's experience as a freelance photographer over the past 30 years led him to create a much sought-after workshop and to author a guidebook for others to use to gain insight into the freelance photography profession, *The Freelance Photographer's Guide To Success: Business Essentials* (May 2021).

23.    Plaintiff has taken photos for some of the world's leading publications, non-profits and corporations including Sports Illustrated, Smithsonian, Time, ESPN, National Geographic Traveler, People, The NY Times Magazine, Costco and Target, among others. He contributed to two (2) team Pulitzer Prizes while at the Los Angeles Times for coverage of the Los Angeles Riots and the 1994 Northridge Earthquake.  Portions of his long-term project documenting immigration have been exhibited worldwide with images residing in the permanent collection at the California Museum of Photography.  His workshop, The Business of Photography Workshop, is offered by leading universities and professional photography organizations around the country.

24.    Bigelow was the recipient of the 2019 Clifton Edom Award by the National Press Photographer Association for his work inspiring and motivating others in the profession to reach new heights.

25.    Plaintiff also works as an adjunct professor at California State University, Northridge teaching photography and photojournalism courses.  He was

the 2017 recipient of the Excellence In Service To Students award issued by the university for his commitment to helping his photography students.

26.     Aside from his workshops, photojournalism assignments, and teaching, Plaintiff also earns a living in part from the licensing of his copyrighted photos, which include commercial businesses and media outlets such as Defendant.

27.     In 2011, Plaintiff captured the Photo at issue in Claremont, California at a neo-Nazi rally he was photographing:



28.     On January 6, 2016, Bigelow registered his Photo with the United States Copyright Office, which issued a Certificate of Registration, bearing Registration Number VA-198-161, and attached as Exhibit "A."

29.     Bigelow has offered the Photo for licensing under a rights-managed licensing model, found on Bigelow's website at:

https://archive.toddbigelowphotography.com/image?&_bqG=64&_bqH=eJzz1E13z E2t8jWu8ChLz6j0SnbLrsxIdS82iCi3MjQ0tjI0MABhIOkZ7xLsbJuXWJWpBmbG O_q52JYA2aHBrkHxni62oSBlHum.mf7mhgEFJp5q8Y7OIbalxUXBqYlFyRlq7iB Fas4gEgB4PSPX&GI_ID=

COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT

**C.    Defendant infringed Plaintiff's Copyrighted Photo**

30.    Recently, Bigelow discovered that his copyrighted Photo was being unlawfully published and displayed by Defendant on its La Opinión website, with a first date of publication of March 2, 2023:

https://laopinion.com/2023/03/02/unidad-y-vigilancia-hacen-la-diferencia-en-el-dia-nacional-de-odio/.

31.    The Photo was also published and displayed on Defendant's Facebook page:

https://www.facebook.com/plugins/post.php?href=https%3A%2F%2Fwww.facebook.com%2FLaOpinionLA%2Fposts%2F571266378369714&.  The Photo is still publicly displayed as the date of this filing despite a takedown demand.

32.    On information and belief, Defendant may have also published and displayed the Photo on its Instagram, Twitter, and TikTok accounts, and/or La Opinión's print version), and these displays would also be unauthorized, with each medium requiring a separate license as Bigelow only licenses his works under a "rights-managed" licensing model. La Opinión circulates a print version sold at newsstands in and around the Los Angeles area and may have also published it in hard copy newspaper form.

33.    Under actual damages suffered by Plaintiff, he is entitled to seek a separate award of damages for each medium (website, print, social media channel) the Photo was used by Defendants for the equivalent to the fair market value for a license using the industry standard of a one-year license, multiplied by each year the Photo is displayed (with each fraction of a year (i.e., one month) commanding full, one-year licensing fees under a "rights managed" model (as opposed to a "royalty-free" license).

34.    Discovery may also show that the Photo was used on other websites owned, managed or controlled by Defendant.

35.     Under a "rights managed" licensing model for damages, "common sense" has no role in what Defendant would want to pay, or like to pay, or have the ability to pay *after the fact* of infringement.  The willing seller/willing buyer hypothetical calculates damages based on the <u>actual use</u> of the copyrighted work. Therefore, Defendant would have had to contact Plaintiff and ask him before using it, "I want to use your photo– how much would you charge for a one-year license for usage of the Photo on our website, various social media channels and hard copy print?"

36.     Plaintiff also can show that Defendant directly and/or indirectly earned revenue from ill-gotten gains causally connected from their infringing use of Plaintiff's Photo and advertising on Defendant's websites, hard copy use and social media use.

37.     Plaintiff in this 17 U.S.C. § 504(b) action can therefore establish a causal connection and relationship between the infringements, the revenue generated from the infringements, and the monetary remedy sought under the Act, which is neither speculative nor arbitrary.

38.     Actual damages should be awarded to Plaintiff from advertising revenue, and the hypothetical-license value, which constitute an acceptable and recognized form of "actual damages" recoverable under Section 504(b).

39.     Where an infringer of a protected work, instead of obtaining permission and paying an agreed licensing fee, proceeds to use that work without permission and without compensating the copyright owner, the copyright owner (e.g., Plaintiff) suffers damages, because Plaintiff was legally entitled to exact a fee for such uses.

40.     Whether the infringing Defendant might in fact have negotiated with Plaintiff or purchased at the Plaintiff's price is irrelevant to whether hypothetical-license damages are available.

COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT

41.     Hypothetical-license damages also assume rather than require the existence of a willing seller and willing buyer. The very word "hypothetical" indicates that damages may be awarded in the absence of an actual license.

42.     To obtain reliable information about hypothetical licenses, the "market survey" approach for actual damages is one acceptable method to confirm what other licensing agents charge such as Getty Images, Shutterstock and industry leading software fotoQuote (which is used by Getty Images, Major League Baseball, LL Bean and other commercial entities).

43.     "Common sense" does not factor into the licensing survey. The question is not what the copyright owner would have charged, nor what the infringer Defendant might have been willing to pay. Rather, this inquiry is a fact question focusing on the fair market value of the work as negotiated between a willing buyer and a willing seller contemplating the actual uses the infringers made.

44.     Plaintiff's damages are based on objective considerations of actual use, not on subjective assessments of value, which could vary widely.

45.     Plaintiff's damages are also measured and determined by the fair market value of license fees by looking to established rates that are regularly paid by licensees in the market.

46.     The calculation of a reasonable licensing fee for use of Plaintiff's Photos must be based on such factors as the type of use, size of use, and circulation.

47.     Plaintiff registered his Photo with the US Copyright Office prior to filing suit and prior infringement occurring, with the effective registration numbers noted above.

48.     Plaintiff may elect to seek and recoup statutory damages as is alleged below.

49.     Statutory damages should be awarded after assessing factors including (1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the

infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties.

50.     Because Defendant copied, distributed, published and displayed Plaintiff's copyrighted Photo without receiving a license or permission from Bigelow or having a valid legal excuse, on July 19, 2023, Plaintiff sent Defendant's Registered Copyright Agent, a cease-and-desist notice via certified mail (the "Notice") and via email to redaccion@impremedia.com, productsupport@impremedia.com and ricardo.lopez-juarez@impremedia.com.

51.     Defendant, through their employee, admits receiving the Notice and allegedly removing Plaintiff's Photos from the La Opinión website, but has not removed it from Facebook, where it still appears as of the date of this filing.   This is evidence of willfulness justifies enhanced statutory damages.

52.     In the Notice, Plaintiff demanded: La Opinión preserve all relevant evidence of the infringements; an accounting of all uses of Plaintiff's Photo; and that La Opinión remove or disable each infringing instance of use of the Photo from its websites, any third-party websites it caused to display the Photo, and any other Uses it may have made of the Photo.

53.     To date, Defendant has refused to provide any evidence as location of all infringements. an accounting of all uses of Plaintiff's Photo, and websites where the Photo was displayed.

54.     Defendant, through their employee also admitted that they got the photo from the Southern Poverty Law Center web page, but the Photo's byline found on Defendant's website shows they attributed to the Anti-Defamation League, which is false.

55.     Given Defendant's nature as a business with industry knowledge of the professional photography industry and advertising/marketing experience, Defendant

knew or should have known that the uses of the Photo on Defendant's La Opinión website, social media and/or print constituted a violation of Plaintiff's rights.

56.     Further, based on the public dockets, Defendants and/or La Opinión have been sued for copyright infringement in as many as 6 cases since 2017 and on information and belief is clearly a serial infringer with no respect for US copyright laws.

57.     Defendant also more likely than not committed numerous Copyright Management Information (CMI) violations related to La Opinión's uses of the Photo because Plaintiff's metadata information (and other information such as Plaintiff's name) associated with the digital files of each Photo were, on information and belief, likely deleted or altered from all the displays and/or false CMI was added to the copy of the Photos that were distributed by Defendant more likely than not for the purpose of preventing Plaintiff from discovering those displays and/or enabling infringements. See 17 U.S. Code § 1203(3)(B). Each CMI violation carries a minimum award of $2,500 to a maximum award of $25,000, along with reasonable attorney fees.

58.     Defendant, directly or through its agent(s) (unknown to Plaintiff) that it authorized such conduct, claims to have sourced the Photo from the Southern Poverty League website, but readily admits that they also easily found the photo  on Plaintiff's licensing website.

59.     Defendant, through its employee, has since asked for a "retroactive" license without paying a fee. Either way, Defendant's intent to commit infringement and knowingly supplying false CMI enabled infringement.

60.     Plaintiff alleges that Defendant removed and/or altered Plaintiff's CMI and/or added and supplied false CMI to the Photo with a reasonable basis to know that the removal, alteration and addition of false CMI would prevent or hinder Plaintiff's ability to discover the infringement(s).

61.     Despite making a demand to be compensated, takedown all unauthorized displays and share an accounting of all displays, Defendant has ignored Plaintiff's efforts, thus requiring the necessity to file suit to protect Plaintiff's rights and seek fair and just compensation.

## V.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (Infringement of Copyrights (17 U.S.C. §§ 106, 501)

62.     Bigelow repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

63.     Bigelow owns a valid copyright registration in the Photo.

64.     Bigelow attaches as Exhibit "B" evidence of infringement, namely Defendant's website and Facebook page

65.     Bigelow never provided authorization to Defendant or their partners, agents, licensees, affiliates, employees, contractors, customers, subscribers, or users to continue to use, copy, publicly display, distribute, license, manipulate, or otherwise commercially exploit the Photographs, namely, the registered Photo.

66.     Defendant has directly infringed Bigelow's copyright in the registered Photo, by using, copying, publicly displaying, distributing, licensing, manipulating, or otherwise commercially exploiting the Photo, without Bigelow's authorization and with actual notice of Bigelow's copyright claims.

67.     Defendant's infringement of the registered Photo was willful and intentional.

68.     Defendant intentionally and willfully infringed Bigelow's copyrights in his Photo by continuing to distribute, publicly display, and otherwise commercially exploit the Photo after Bigelow sent Notice, and Defendant did so with actual knowledge that was infringing Bigelow's copyright, and with actual notice of Bigelow's copyright claims.

69. Defendant caused damages to Bigelow from copyright infringement of the Photo and had the right and ability to take down the Photo after notifications.

70. Defendant had actual knowledge of the infringement of the Photo and materially contributed and caused infringement once Bigelow sent notice that Defendant was not allowed to display, distribute, and publish the Photo.

71. Defendant is vicariously liable for its respective employees', contractors', and/or agents' infringement of Bigelow's Photo as described above.

72. Defendant knew or had reason to know of their respective employees', contractors, and agents' infringement and intentionally induced and/or materially contributed to such infringement.

73. Defendant knew or had reason to know of, and materially contributed to the infringement of those to whom each copied, distributed and/or displayed the Photo.

74. Defendant is contributorily liable for their respective employees', contractors', and agents' infringement.

75. Defendant is secondarily liable for their respective employees, contractors, and agents' infringement.

76. Bigelow has suffered actual damages as a direct and proximate result of Defendant's direct and secondary infringement.

77. Pursuant to 17 U.S.C. § 504(c)(2), as a result of Defendant's infringement of Bigelow's exclusive rights in the Photo, Bigelow is alternatively entitled to recover statutory damages up to a maximum amount of $150,000.00 with respect to his Photo, registered prior to March 3, 2023 pursuant to 17 U.S.C. § 504(c)(1) when Defendant infringed the Photo.

78. Alternatively, at Bigelow's election prior to entry of final judgment, Bigelow is entitled to recover damages based on his actual damages suffered as a result of Defendant's infringements and the disgorgement of Defendant's profits attributable to the infringements, pursuant to 17 U.S.C. § 504(b), which amounts

will be proven at trial, as well as any licensing fee that Plaintiff could have received if Defendant had chosen to lawfully seek a license.

79.     Bigelow is entitled to his costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

80.     Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Bigelow, unless enjoined by this Court. Bigelow has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Bigelow is entitled to a permanent injunction prohibiting infringement of Bigelow's exclusive copyright in his Photo by the Defendant and all persons acting in concert with the Defendant.

**SECOND CAUSE OF ACTION**

**Violations of Copyright Management Information**

**Under 17 U.S.C. §§ 1202 & 1203**

81.     Bigelow repeats and realleges each and every allegation set forth in the preceding paragraphs of this Complaint.

82.     On information and belief, Defendant found Plaintiff's Photo either on Plaintiff's website but falsely credits the Anti-Defamation League as the owner or rights holder of the Photo or found it on the Southern Poverty Law Center's website but credited the Anti-Defamation League to hide the infringement and prevent Plaintiff from discovering it.

83.     As alleged above, the false copyright management information incorrectly identifies the Anti-Defamation League as opposed to solely crediting Bigelow as the exclusive copyright interest holder in the Photo or authorized licensor of Bigelow's Photo.

84.     Defendant either visited Bigelow's website and copied the Photo, deleting Bigelow's CMI from the Photo and/or added false copyright management information (the Anti-Defamation League and reference to the "National Social Movement of Detroit") provided in connection with the reproduction, distribution,

1  and public display and of the Photo on Defendant's website, social media and/or

2  print was intended by Defendant to facilitate or conceal the infringement of

3  Bigelow's exclusive copyright.

4      85.   Defendant intended the false copyright management information to

5  induce readers of Defendant's website and social media to believe that Defendant

6  had permission to use Bigelow's Photo or that a third party owned the rights to the

7  Photo, as opposed to Bigelow, the copyright owner.

8      86.   Defendant's actions constituted willful and deliberate violations of the

9  Digital Millennium Copyright Act, 17 U.S.C. § 1202(a).

10     87.   As of March 3, 2023, Defendant knew that its use the false attribution

11 and/or deleting of Bigelow's CMI under 17 U.S.C. § 1202 (a) was "False Copyright

12 Management Information," and Defendant, in violation of the law, knowingly and

13 with the intent to induce, enable, facilitate, or conceal infringement, (1) provided

14 copyright management information that Defendant knew was false, and/or despite

15 this knowledge,  (2) distributed copyright management information that is false by

16 using the false attribution to Bigelow's Photo.

17     88.   Defendant also may be liable under 17 U.S.C. § 1202 (b) for "Removal

18 or Alteration of Copyright Management Information" because Defendant, without

19 the authority of the copyright owner, Plaintiff, (1)intentionally removed or alterd

20 any copyright management information, such as Plaintiff's name, and (2)

21 Defendant distributed copyright management information knowing that the

22 copyright management information had been removed or altered without authority

23 of the copyright owner, Plaintiff, or knowing, or, with respect to civil remedies

24 under section 1203, having reasonable grounds to know, that Defendant's conduct

25 will induce, enable, facilitate, or conceal an infringement of any right under this

26 title.

27     89.   By reason of Defendant's CMI violation(s), Bigelow has suffered

28 damages and is entitled to recover his actual damages and to disgorge any

COMPLAINT FOR DAMAGES BASED ON COPYRIGHT INFRINGEMENT

additional profits of Defendant attributable to the violations, pursuant to 17 U.S.C. § 1202(c)(2).

90.    Alternatively, and at Bigelow's sole discretion exercised any time prior to entry of final judgment, Bigelow is entitled to recover statutory damages in an amount between $2,500 and $25,000 per violation of the Digital Millennium Copyright Act, pursuant to 17 U.S.C. § 1203(c)(3)(B) for at least one CMI violation. Discovery may show more violations than are known to Plaintiff at this time.

91.    Further irreparable harm is imminent as a result of Defendant's conduct, and Bigelow is without an adequate remedy at law. Bigelow is therefore entitled to an injunction, in accordance with 17 U.S.C. § 1203(b), restraining Defendant, their officers, directors, agents, employees, representatives, assigns, and all persons acting in concert with Defendant from engaging in further violations of the Digital Millennium Copyright Act.

92.    Bigelow is entitled to recover costs and attorneys' fees in accordance with 17 U.S.C. § 1203(b)(4) and (5).

## VI.    RELIEF REQUESTED

93.    Wherefore, Plaintiff prays for judgment against Defendant as follows:

    a.    Awarding Plaintiff damages derived from the infringing acts of $150,000 in statutory damages, or in the amount permitted by law with respect to the Photo infringed, including actual or statutory damages for copyright infringements and $25,000.00 for CMI damages.

    b.    Granting Plaintiff injunctive and other equitable relief enjoining Defendants, its officers, agents, vendors, servants, and employees, and all those acting in concert with the aforementioned parties from directly or indirectly reproducing,

1    publicly performing, publicly displaying, or distributing the

2    copyrighted Photo to which Plaintiff has exclusive rights.

3    c.    Disgorging all profits derived by Defendant that were obtained

4    as a result of the conduct alleged herein.

5    d.    Awarding prejudgment interest to the maximum extent

6    permitted by law.

7    e.    Awarding Plaintiff's attorneys' fees, costs, and expenses in this

8    action for willful infringement and CMI violations.

9    f.    Awarding such other and further relief that is just and proper.

10

## VII.   JURY TRIAL DEMANDED

11    94.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Bigelow

12 respectfully demands a trial by jury of all the claims asserted in this Complaint so

13 triable.

14

15  Dated: August 14, 2023

16                      Respectfully submitted,

17                      **DUNCAN FIRM, P.A.**

18                      */s/ James H. Bartolomei III*

19                      James H. Bartolomei III

20                      *Attorneys for Plaintiff Todd Bigelow*

21

22

23

24

25

26

27

28